IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

VICTORIA CARNLINE,  )
            Plaintiff,  )
v.  )   Case No. CIV-15-167-HE
CAROLYN W. COLVIN, Acting  )
Commissioner of the Social Security  )
Administration,  )
            Defendant.  )

**REPORT AND RECOMMENDATION**

Plaintiff, Victoria Carnline, seeks judicial review of the Social Security Administration's denial of disability insurance benefits and supplemental security income benefits. This matter has been referred by Chief United States District Judge Joe Heaton for proposed findings and recommendations. *See* 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons set forth below, it is recommended that the Commissioner's decision be reversed and the case remanded for further administrative proceedings consistent with this Report and Recommendation.

**I.**    **Procedural Background**

Plaintiff protectively filed an application for disability insurance benefits and supplemental security income benefits on September 22, 2011, alleging a disability onset date of March 1, 2011. The Social Security Administration denied the applications initially and on reconsideration. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. *See* Administrative Record (AR) [Doc. No. 10], 17-30. The Appeals Council denied Plaintiff's request for review. AR 1-3. This appeal followed.

## II.  The ALJ's Decision

The ALJ followed the sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (explaining five-step sequential evaluations process); *see also* 20 C.F.R. §§ 404.1520; 416.920. The ALJ first determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date, March 1, 2011. AR 19. At step two, the ALJ determined that Plaintiff has the following severe impairments: de Quervain syndrome (a condition affecting the tendons on the thumb side of the wrist), tendinitis of right wrist, anxiety and depression, learning disorder and mood disorder. *Id*. At step three, the ALJ found that Plaintiff's impairments do not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 19-21.

> The ALJ next determined Plaintiff's residual functional capacity (RFC):
>
> [T]he claimant has the residual functional capacity to perform light work . . . except she can perform no more than frequent fine finger manipulation with her left nondominant hand/arm. The claimant could not do work involving interaction with the general public in a retail sales context. She could occasionally stoop and crouch.

AR 21. At step four, the ALJ found that Plaintiff could perform her past relevant work as a fast food worker. AR 28. Alternatively, the ALJ found a number of jobs exist in the national economy that Plaintiff could perform including motel cleaner, price marker and apparel stock cashier. AR 29. The ALJ concluded, therefore, that Plaintiff is not disabled for purposes of the Social Security Act. *Id*.

## III.  Plaintiff's Claims

Plaintiff raises the following claims of error: (1) the ALJ's RFC determination is legally flawed because it does not contain work-related limitations for all of the severe impairments and the jobs by the vocational expert (VE) "do not fit the great weight doctors"; (2) the ALJ

2

"performed an errant credibility evaluation"; (3) the ALJ committed other reversible error at step four; and (4) the ALJ failed to analyze Plaintiff's GAF scores.[1]

## IV. Standard of Review

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

---

[1] "GAF" stands for "Global Assessment of Functioning." *Keyes–Zachary v. Astrue*, 695 F.3d 1156, 1162 (10th Cir. 2012). "The GAF is a 100–point scale divided into ten numerical ranges, which permits clinicians to assign a single ranged score to a person's psychological, social, and occupational functioning." *Id*. at 1162 n.1.

## V. Analysis

### A. Whether the ALJ Erred in Determining Plaintiff's RFC

Plaintiff challenges both the mental and physical components of the RFC determination.[2] The Court addresses those components separately, below.

The RFC is an assessment of what a claimant is still "functionally capable of doing on a regular and continuing basis, despite [her] impairments: the claimant's maximum sustained work capability." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988). An ALJ must make specific RFC findings based on all the relevant evidence in the case record. *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996); SSR 96–8p, 1996 WL 374184, at *5 (July 2, 1996). In determining the scope of a claimant's RFC, an ALJ's assessment must "consider all of [a claimant's] medically determinable impairments . . . including [her] medically determinable impairments that are not severe." 20 C.F.R. §§ 404.1545, 416.945. An impairment is medically determinable if it is "established by medical evidence consisting of signs, symptoms, and laboratory findings, not only [a claimant's] statement of symptoms." 20 C.F.R. §§ 404.1508, 416.908.

#### 1. Plaintiff's Mental Limitations

Plaintiff first claims that the ALJ's RFC determination is flawed because it does not comply with Social Security Ruling (SSR) 96-8p which requires that mental limitations be expressed in terms of work-related functions. *See* Plaintiff's Brief at pp. 8-9 (*citing* SSR 96-8p, 1996 WL 374184 at *4 (July 2, 1996). She also claims the ALJ's reliance on jobs identified by the VE is not supported by substantial evidence because the hypotheticals to the VE did not

---

[2] In his first claim of error, Plaintiff focuses on mental limitations and in her third claim of error, Plaintiff focuses on limitations relating to the use of her hands and wrists.

4

include all of her mental impairments. *See id.* (*citing Jaramillo v. Colvin*, 576 F. App'x 870, 876 (10th Cir. 2014)).

James Sturgis, PhD, completed a Mental Residual Functional Capacity Assessment (MRFCA) on December 16, 2011. AR 460-462. In Section I, he opined, by checking boxes on the form, that Plaintiff is markedly limited in her ability to understand and remember detailed instructions. AR 460. He further opined that Plaintiff is markedly limited in her ability to carry out detailed instructions. *Id*. And, Dr. Sturgis opined that Plaintiff is markedly limited in her ability to interact appropriately with the general public. AR 461. As to the remaining seventeen categories of limitations set forth on the form, Dr. Sturgis found that Plaintiff is not significantly limited. AR 460-61.

Dr. Sturgis then set forth his RFC findings in Section III, the narrative portion of the MRFCA. *See, e.g., Lee v. Colvin*, -- F. App'x --, 2015 WL 7003410 at *2 (10th Cir. Nov. 12, 2015) (addressing proper analysis of the MRFCA under governing rules and regulations and noting that "adjudicators are to use the Section III narrative as the RFC assessment"). He opined that Plaintiff can: (1) perform simple tasks with routine supervision; (2) relate to supervisors and peers on a superficial work basis; and (3) adapt to a work situation. AR 462. But he further opined that Plaintiff cannot relate to the general public. *Id*. Stephen Scott, PhD, another state agency psychologist, affirmed these findings. AR 480.

The ALJ relied on the MRFCA completed by Dr. Sturgis in making his RFC assessment. AR 28 ("The undersigned general [sic] concurs with the assessments of the . . . State agency psychologist . . . ."). As set forth above, the mental component of the ALJ's RFC determination expressly limits Plaintiff to work that does not involve interaction with the general public. The RFC does not, however, expressly address Plaintiff's ability to perform only "simple tasks with

routine supervision." Similarly, the RFC does not address the limitation that Plaintiff can only relate to supervisors and peers on a superficial work basis.

The Commissioner acknowledges that the findings of Drs. Sturgis and Scott, limiting Plaintiff to "simple tasks with routine supervision," are not expressly included in the ALJ's RFC determination. *See* Commissioner's Brief at p. 14, n. 6 ("The ALJ did not explicitly state that Plaintiff was limited to 'simple' work, but she gave weight to the state agency psychologists (who so found) and identified only unskilled jobs that Plaintiff could perform."). The Commissioner contends, in essence, that any error is harmless because the ALJ identified only unskilled work and such work involves "only 'simple' duties that require 'little or no judgment.'" *Id*. (*citing* 20 C.F.R. 404.1568(a); SSR 82-41, 1982 WL 31389 (Feb. 26, 1979)).

In *Groberg v. Astrue*, 505 F. Appx. 763, 770 (10th Cir. 2012) the Commissioner made a virtually identical argument and "contended that because unskilled work requires 'little or no judgment to do simple duties that can be learned for a short period of time,'" the ALJ implicitly included mental limitations in the hypothetical question he posed to the VE because the ALJ had asked the VE to identify only unskilled jobs and the ALJ had only listed unskilled jobs at step five of his analysis." The Tenth Circuit held:

> This argument is not a true 'harmless error' argument because it supplies a new factual and/or legal predicate not present in the ALJ's reasoning. In any event, it *runs directly counter to Tenth Circuit authority*. A limitation to 'simple work' or 'unskilled jobs' is generally insufficient to address a claimant's mental impairments. *Chapo v. Astrue*, 682 F.3d 1285, 1290 n. 3 (10th Cir. 2012) (citing cases); *Wayland v. Chater*, Nos. 95–7029, 95–7059, 1996 WL 50459, at *2 (10th Cir. Feb. 7, 1996) ("[T]he tacit premise in the ALJ's analysis, i.e., that a cognitive or emotional impairment may be functionally equated with the lack of a skill, as that term is employed in the Secretary's regulations, is wrong. Numerous authorities illustrate the basic point that intact mental aptitudes are not skills, but, rather, general prerequisites for most work at any skill level.").

*Id*. at 770 (emphasis added). *See also Wiederholt v. Barnhart*, 121 F. App'x 833, 839 (10th Cir. 2005) ("[t]he relatively broad, unspecified nature of the description 'simple' and 'unskilled' work does not adequately incorporate . . . impairments . . . such as moderate difficulties maintaining concentration, persistence or pace . . . ."); *Knuutila v. Colvin*, -- F. Supp. 3d --, 2015 WL 5116723 at *2 (D. Colo. Aug. 31, 2015) (finding that "because the ALJ's apparent equation of unskilled work [with] the ability to perform work requiring 'simple, repetitive tasks,' . . . is contrary to the law of this circuit, the disability decision must be reversed.").

Although the ALJ stated that he "concurred" with the findings of Dr. Sturgis, the ALJ incorporated only Dr. Sturgis's finding that Plaintiff cannot relate to the general public. Without explanation, the ALJ failed to incorporate the additional mental limitations set forth in the RFC. The ALJ was required to explain his reasons for rejecting a portion of the medical records he adopted. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007). And if the ALJ did not reject the mental limitations as set forth in Dr. Sturgis's opinion, he was required to include them in the RFC and the hypotheticals to the VE. *Id*. (remanding on grounds ALJ failed to address why he rejected some moderate limitations on doctor's RFC assessment, while accepting others, where ALJ did not state that any evidence conflicted with the doctor's opinion regarding those moderate limitations); *see also* SSR 96–8p, 1996 WL 374184 at *5 ("[t]he RFC assessment must be based on all of the relevant evidence in the case record). Therefore, a remand is required.[3]

---

[3] In this regard, the Court notes that at step three, the ALJ determined that Plaintiff had "moderate difficulties" in maintaining concentration, persistence or pace. AR 20. Plaintiff focuses the majority of her argument on this finding. While the Court recognizes the distinction between a step-three finding and a claimant's residual functional capacity, the ALJ's step-three finding further supports Plaintiff's mental limitations and underscores the ALJ's error in failing to address why he omitted the limitations included in Dr. Sturgis's MRFCA when making the RFC determination or when questioning the VE.

7

## 2. Plaintiff's Physical Limitations – Use of Hands

The Court next addresses what Plaintiff alleges to be deficiencies in the physical component of the ALJ's RFC determination. Although Plaintiff does not raise her claim with precision, at the crux of the claim is Plaintiff's contention that the ALJ erred in failing to include any functional limitations as to Plaintiff's use of her right hand. Plaintiff relies on the ALJ's step-two finding that she suffers from de Quervain syndrome and that this is a severe impairment. AR 19.[4] The Court notes that both the medical record (discussed below) and the ALJ's decision are unclear and/or ambiguous as to whether this syndrome is present in Plaintiff's right hand. *See* AR 19 (ALJ's step-two finding that de Quervain's syndrome is a severe impairment without specifying whether it affects one or both hands); *see also* AR 26 (ALJ's credibility analysis finding that "[a] review of the claimant's medical documentation shows that the claimant has de Quervain's syndrome").[5]

---

[4] De Quervain syndrome is described as follows:

> De Quervain syndrome usually occurs after repetitive use (especially wringing) of the wrist, although it occasionally occurs in association with RA. The major symptom is aching pain at the wrist and thumb, aggravated by motion. Tenderness can be elicited just proximal to the radial styloid process over the site of the involved tendon sheaths. Diagnosis is highly suggested by the Finkelstein test. The patient adducts the involved thumb into the palm and wraps the fingers over the thumb. The test is positive if gentle passive ulnar deviation of the wrist provokes severe pain at the affected tendon sheaths.

De Quervain Syndrome, Merck Manuals, http://www.merckmanuals.com/ professional/ musculoskeletal-and-connective-tissue-disorders/hand-disorders/de-quervain-syndrome (last visited December 9, 2015).

[5] In contrast, the ALJ expressly found at step two that Plaintiff's severe impairment of tendinitis affects her right wrist. AR 19

The RFC includes only limitations with respect to Plaintiff's left hand. The RFC provides that Plaintiff "can perform no more than frequent fine finger manipulation with her left nondominant hand/arm." AR 21. The RFC contains no restrictions as to Plaintiff's right hand.

Although not directly addressed by Plaintiff, independent of any ambiguity as to whether Plaintiff suffers from de Quervain syndrome in the right hand, the ALJ also found at step two that Plaintiff suffers from a severe impairment of the right hand, specifically, tendonitis. AR 19. The Commissioner recognizes the ALJ's finding of severe impairment(s) of the right hand at step two and that the RFC only addresses left hand functioning but contends that "any inconsistency in that regard was ultimately harmless . . . because the record simply did not document any medically-necessary right hand restrictions that were omitted by the ALJ." *See* Commissioner's Brief at p. 18. The Commissioner then proceeds to argue that the medical record shows normal range of motion in both wrists and hands, and otherwise fails to support any right hand restrictions. *Id*. at 19. The Commissioner also points to evidence that Plaintiff quit taking thyroid medicine and "treatment providers suspected a link between the uncontrolled thyroid condition and the hand/wrist syndrome." *Id*. Additionally, the Commissioner cites various daily activities of Plaintiff that "d[o] not suggest significant hand limitations[.]" *Id*.

But these are all post hoc justifications offered by the Commissioner. Indeed, in making these arguments, the Commissioner does not cite to any findings by the ALJ. The court cannot adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the decision itself. *See Haga*, 482 F.3d at 1207–08.

Moreover, the Commissioner's argument is problematic because the evidence the Commissioner contends is insufficient to support any RFC limitation with respect to Plaintiff's right hand is the very same evidence the ALJ relied upon to include a limitation with respect to

9

Plaintiff's left hand. Significantly, no medical evidence in the record addresses functional limitations resulting from Plaintiff's impairments to either hand.[6] As a result, the ALJ made unsupported findings as to Plaintiff's functional limitations of the left hand. Indeed, no medical evidence explains the ALJ's decision to find Plaintiff is limited to no more than frequent fine finger manipulation of the left hand. The ALJ's improper RFC "findings may have sprung from his failure to develop a sufficient record on which those findings could be based." *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994); *see also* SSR 96-8p, 1996 WL 374184 at *5 (July 2, 1996) ("The adjudicator must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC."). Alternatively, as discussed, the record simply may not support any such limitations. But such inherent inconsistencies must be resolved by the ALJ in the first instance.

The only evidence that Plaintiff's limitations of the left hand are more severe than those of her right hand is Plaintiff's testimony at the hearing before the ALJ. Plaintiff testified that she cannot make a fist with her left hand and cannot turn a doorknob with her left hand. AR 42, 45.[7] She testified that she is right hand dominant. AR 43. When asked whether she has "any trouble

---

[6] The state agency doctors, Dr. James Metcalf and Dr. Timothy Walker, found Plaintiff did not have any severe physical impairments. AR 478, 481. The ALJ stated that he generally concurred with their assessments, *see* AR 28, but did not address why, contrary to their assessments, he found Plaintiff suffers from severe physical impairments. The ALJ's findings also appear to be contrary to SSR 96-8P. *See id.*, 1996 WL 374184 at *3 ("[W]here there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity.").

[7] The ALJ appears to have made a typographical error in the decision. The ALJ found, based on Plaintiff's testimony, that she "cannot turn a doorknob with her *right* hand." AR 23 (emphasis added). But the hearing transcript clearly establishes that Plaintiff testified she cannot turn a doorknob with her left hand. *See* AR 45.

with [her] right [hand]," Plaintiff testified that "[f]rom time to time, I do." AR 45. She further testified that "[m]ost of the pain in my hands is my left hand[.]" *Id*. But Plaintiff also testified that she has to use both hands to lift a gallon of milk. AR 44. Plaintiff's testimony, alone, provides insufficient support for the ALJ's RFC determination because it provides no basis for assessing the degree of her functional limitations.

Additionally, in assessing Plaintiff's credibility, the ALJ did not draw any distinction between Plaintiff's right hand and her left hand. In his discussion of the medical evidence, the ALJ noted that Plaintiff's "[g]rip strength was 5/5 and symmetric bilaterally," that Plaintiff had "normal hand skills" and that Plaintiff "has not had any substantial permanent limitations or restrictions placed on her ability to perform basis work activities by any treating or examining physicians . . . ." AR 27. This Court's own review of the medical evidence show these findings hold true as to both Plaintiff's left hand and her right hand. *See* AR 446, 449, 450.

Under these circumstances, the ALJ's RFC finding with respect to physical limitations arising from the use of her hands is not supported by substantial evidence. Plaintiff's testimony alone is insufficient. Nor does Plaintiff's testimony or any other objective medical evidence establish why the ALJ included in the RFC a left-hand limitation of frequent fine finger manipulation, as opposed to no fine finger manipulation or even occasional fine finger manipulation. And the ALJ did not explain his reasons for doing so. *See* SSR 96-8p, 1996 WL 374184 at *7 ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations.")). The distinction is significant as the VE testified that Plaintiff would not be able to perform her past relevant work or any unskilled work if the left-hand limitation provided for no fine finger manipulation. AR 55.

11

Although these errors relate to the ALJ's RFC finding as to Plaintiff's left hand, the ALJ relied on the exact same medical evidence to find no limitations as to Plaintiff's right hand, notwithstanding severe impairments of the right hand. Therefore, the ALJ's RFC determination is not supported by substantial evidence as to either of Plaintiff's hands. Given the ambiguities in the record, the inherent inconsistencies in the ALJ's findings, and the lack of any medical evidence supporting the ALJ's RFC determination as to limitations of Plaintiff's use of her hands, a remand is required. On remand, the ALJ should consider his duty to develop the record so that an accurate and medically supported RFC determination can be made.

### B. The ALJ's Failure to Address Plaintiff's GAF Scores

Plaintiff also claims the ALJ failed to analyze all of the medical evidence because he addressed only two GAF scores and failed to acknowledge other lower GAF scores, including those assessed by Plaintiff's treating physician, Dr. Ghaznavi. Because the Court has already determined a remand is required with respect to the mental component of the ALJ's RFC determination, the Court does not address this issue. However, the ALJ is reminded on remand that he has a duty to consider GAF scores. *Luttrell v. Astrue*, 453 F. App'x 786, 792 (10th Cir. 2011) (*citing* SSR 06-03p, 2006 WL 2329939 at *5; *Bowman*, 511 F.3d at 1275-76). The ALJ is further reminded of the weight to be given the opinion of a treating physician and his duty to provide reasons for rejecting that opinion.[8] And, finally, the ALJ is reminded that he must "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996).

---

[8] *See* 20 C.F.R. § 404.1527(c)(1)-(6) (addressing weight to be given to medical opinions and providing that more weight is given "to opinions from your treating sources, since those sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.").

### C. The ALJ's Credibility Analysis

Plaintiff's final claim of error is that the ALJ's credibility analysis is flawed. Plaintiff's challenge to the ALJ's credibility analysis relates to her mental impairments. Plaintiff claims the ALJ impermissibly relied on her activities of daily living and Plaintiff's alleged non-compliance with treatment when that non-compliance was due to her mental limitations. Plaintiff also claims the ALJ failed to address the weight given to the third-party testimony of her father.

As set forth above, the Court has identified errors with respect to the ALJ's RFC finding warranting remand of the case for further administrative proceedings. One of those errors specifically relates to Plaintiff's mental impairments. On remand, the ALJ will be required to make additional findings that will undoubtedly affect his review of the administrative record and his credibility analysis. *See Clifton v. Chater*, 79 F.3d 1007 (10th Cir.1996). Because the ALJ's treatment of evidence on remand related to these issues may affect the credibility analysis, the Court does not reach this final issue. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

### VI. Plaintiff's Request for Assignment of New ALJ on Remand

As a final matter, the Court addresses Plaintiff's marginal effort to show the ALJ in this case is biased and Plaintiff's case should be assigned to a different ALJ on remand. Plaintiff alleges that because the ALJ's first hypothetical to the VE addressed a limitation to "no fine finger manipulation" and the second hypothetical addressed a limitation to no more than "frequent fine finger manipulation," without addressing a frequency level of occasional, the hypotheticals demonstrate "a very plain intent to deny [benefits to] Ms. Carnline despite what the evidence actually showed." *See* Plaintiff's Brief at p. 18. Plaintiff then contends that "for such

intentional action by this ALJ," on remand "this court [should] suggest that the Commissioner reassign this case to a new ALJ." *Id*.

Plaintiff's request for this Court to make any such "suggestion" should be denied. "In general, it is for the Commissioner, through the Appeals Council, to determine whether a case should be assigned to a new ALJ on remand." *Waggener v. Astrue*, No. 08-cv-00715-REB, 2009 WL 2601372 at *1 (D. Colo. Aug. 21, 2009) (unpublished op.) (citations omitted). Plaintiff remains free to make such a request before the Appeals Council, *see* 20 C.F.R. § 404.983, and the Court finds the issue is more appropriately addressed by that entity. On the current record, Plaintiff's allegations of bias are too speculative. *See Waggener*, 2009 WL 2601372 at *1 (noting Plaintiff's failure to make a particularized showing of bias).

## RECOMMENDATION

It is recommended that the Commissioner's decision be reversed and the case remanded for further administrative proceedings consistent with the recommendation set forth herein.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed with the Clerk of the District Court by December 28, 2015. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the Chief District Judge in this matter.

ENTERED this 10th day of December, 2015.

_____
BERNARD M. JONES
UNITED STATES MAGISTRATE JUDGE